KIMNACH, Appellant,

v.

**OHIO DEPARTMENT OF HUMAN SERVICES, Appellee.***

[Cite as *Kimnach v. Ohio Dept. of Human Serv.* (1994), 96 Ohio App.3d 640.]

Court of Appeals of Ohio,
Franklin County.

94APE04–520.

Decided Sept. 8, 1994.

---

* Reporter's Note: A discretionary appeal to the Supreme Court of Ohio was not allowed in (1994), 71 Ohio St.3d 1447, 644 N.E.2d 409.

*Martin, Pergram, Browning & Parker Co., L.P.A.,* and *Dennis L. Pergram,* for appellant.

*Lee Fisher,* Attorney General, and *James M. McGovern,* Assistant Attorney General, for appellee.

TYACK, Judge.

On January 25, 1993, Gale Kimnach submitted an application for medicaid benefits. Kimnach lived in a nursing home and his wife, Helen Kimnach, lived at home. A resource assessment was completed by the Franklin County Department of Human Services, which identified the resources of the Kimnachs. The resources totaled $152,694. The department also determined that Helen Kimnach's minimum monthly maintenance needs allowance ("MMMNA") was $1,158 and that the community spouse resource allowance ("CSRA") was $70,740. On February 3, 1993, the department mailed a notice to Mr. Kimnach, denying his application for medicaid on the basis of excess resources.

Mr. Kimnach filed a notice of appeal, and a hearing was held before a department hearing officer. On April 20, 1993, the hearing officer issued a recommendation which was accepted by the hearing authority, overruling the appeal. Mr. Kimnach requested an administrative appeal and on May 19, 1993, the administrative appeal decision was issued, affirming the denial of medicaid.

Mr. Kimnach appealed to the Franklin County Court of Common Pleas, which affirmed the denial in a judgment entry filed March 22, 1994. Mr. Kimnach has appealed to this court, assigning one error for our consideration:

"The administrative agencies and the trial court erred, as a matter of law, by not revising the community spouse resource allowance as the proper revision would have resulted in Appellant not having excess resources attributed to him."

Appellant's assignment of error and his arguments pursuant thereto involve the construction and interpretation of federal statutes and the Ohio Administrative Code with regard to the medicaid program. At the time of his application for medicaid benefits, appellant was living in a nursing home and his wife was living at home. Under federal law and with regard to applicants for medicaid, appellant was deemed the "institutionalized spouse" and his wife was deemed the "community spouse." See Section 1396r–5(h), Title 42, U.S.Code. In order to determine whether the institutionalized spouse is eligible for medicaid, a resource assessment is completed by the state. As stated above, such a resource assessment was completed by the department, appellee, and it was determined, and the parties on appeal agree, that appellant and his wife's resources totaled $152,694. These resources consisted of a savings account, certificates of deposit and tax-exempt H bonds. Appellee also determined that Mrs. Kimnach's MMMNA was $1,158 and that the CSRA was $70,740. Section 1396r–5, Title 42, U.S.Code provides that the institutionalized spouse, appellant, may transfer an amount equal to the CSRA to the community spouse, Mrs. Kimnach. However, even after taking into account the amount of resources retained by Mrs. Kimnach, appellant still had resources well above the $1,500 limit for medicaid eligibility. Appellant argues, however, that the amount of income that will be generated by the CSRA will be insufficient to meet his wife's MMMNA.

It is undisputed that appellant received $663 a month in social security and Mrs. Kimnach received $237 a month in social security. Therefore, Mrs. Kimnach would need resources which would generate at least $921 a month in income in order to meet the MMMNA of $1,158. For purposes of this case, resources equal capital, and income is interest earned on that capital or other income such as social security benefits. Evidence presented at the hearing shows that even if all of the $152,694 in resources were transferred to Mrs. Kimnach, only $764 a month of income would be generated, which still falls short of the MMMNA. Appellant argues, therefore, that pursuant to Section 1396r–5, Title 42, U.S.Code, all of the resources must be considered as the CSRA and that they must be transferred to his wife. If this were done, appellant would have no resources attributed to him and he would, therefore, be eligible for medicaid. Appellee, on the other hand, argues that the federal statutes call first for the transfer of income, not resources. If this were done, the MMMNA would be met

and because no additional resources would be transferred to his wife, appellant would still have excess resources and would not be eligible for medicaid. We interpret the statutes as allowing the transfer of *resources* first in order to raise the initial CSRA so that the revised CSRA will generate sufficient income to meet the MMMNA.

Appellant seeks to have the CSRA revised pursuant to Section 1396r-5(e)(2)(C), Title 42, U.S.Code, which states the following:

"(2) * * * If either the institutionalized spouse or the community spouse is dissatisfied with a determination of—

" * * *

"(v) * * * the community spouse resource allowance (as defined in subsection (f)(2));

"such spouse is entitled to a fair hearing * * * with respect to such determination *if an application for benefits* * * * *has been made* on behalf of the institutionalized spouse. * * *

" * * *

"(C) Revision of community spouse resource allowance. If either such spouse establishes that the community spouse resource allowance (in relation to the amount of income generated by such an allowance) is inadequate to raise the community spouse's income to the minimum monthly maintenance needs allowance, there *shall* be substituted, for the community spouse resource allowance under subsection (f)(2), an amount adequate to provide such a minimum monthly maintenance needs allowance." (Emphasis added.)

Appellee argues that such a revision of the CSRA and transfer of resources does not occur until the institutionalized spouse is determined to be eligible for medicaid and only if the transfer of *income* is insufficient. Appellee contends that *income*, in the form of a community spouse monthly income allowance ("CSMIA"), not resources, is transferred first in order to meet the MMMNA and only after one is determined eligible for medicaid. Therefore, if appellee's interpretation is correct, neither income nor resources would be transferred in this case because appellant was determined not to be eligible for medicaid. We cannot find support for this interpretation under a plain reading of the federal provisions.

Appellee agrees that Section 1396r-5, Title 42, U.S.Code, calls for the computation of the MMMNA, CSRA and CSMIA upon the *application* for medicaid benefits. Appellee contends, however, that they are not implemented until after one is determined to be eligible. Appellee is correct, however, only as

to the implementation of the CSMIA. Section 1396r–5(d), Title 42, U.S.Code, states:

"(1) Allowances to be offset from income of institutionalized spouse. *After an institutionalized spouse is determined or redetermined to be eligible for medical assistance,* in determining the amount of the spouse's income that is to be applied monthly to payment for the costs of care in the institution, there shall be deducted from the spouses's monthly income the following amounts in the following order:

" * * *

"(B) A community spouse monthly income allowance (as defined in paragraph (2)), but only to the extent income of the institutionalized spouse is made available to (or for the benefit of) the community spouse.  * * *

" * * *

"(2) Community spouse monthly income allowance defined. In this section (except as provided in paragraph (5)), the 'community spouse monthly income allowance' for a community spouse is an amount by which—

"(A) except as provided in subsection (e) of this section, the minimum monthly maintenance needs allowance (established under and in accordance with paragraph (3)) for the spouse, exceeds

"(B) the amount of monthly income otherwise available to the community spouse (determined without regard to such an allowance)."  (Emphasis added.)

The CSMIA, therefore, only comes into play once the institutionalized spouse is determined eligible. The provision, however, does not preclude implementation of other provisions regarding revision of the CSRA *prior* to a determination of eligibility.

Section 1396r–5(e), Title 42, U.S.Code, cited above, has as its heading "Notice and fair hearing" and states as follows:

"(1) Notice. Upon—

"(A) a determination of eligibility for medical assistance of an institutionalized spouse, *or*

"(B) *a request* by either the institutionalized spouse, or the community spouse, or a representative acting on behalf of either spouse,

"each State shall notify both spouses (in the case described in subparagraph (A)) or the spouse making the request (in the case described in subparagraph (B)) of the amount of the community spouse monthly income allowance (described in subsection (d)(1)(B) of this section), of the amount of any family allowances (described in subsection (D)(1)(C) of this section), *of the method for computing*

*the amount of the community spouse resources allowance permitted under subsection (f)* of this section, and of the spouse's right to a fair hearing under this subsection *respecting ownership or availability of income or resources, and the determination of the community spouse* monthly income or *resource allowance.*

"(2) Fair hearing. (A) In general. If either the institutionalized spouse or the community spouse is dissatisfied with a determination of—

"(i) the community spouse monthly income allowance;.

" * * * *

"(v) *the determination of the community spouse resource allowance* * * *;

"such spouse is entitled to a fair hearing * * * with respect to such determination *if an application for benefits* * * * *has been made on behalf of the institutionalized spouse.* * * *" (Emphasis added.)

■ It is in this same section, under subsection (e)(2)(C), cited earlier, that the provision for revision of the CSRA is set forth. Section 1396r–5(e), Title 42, U.S.Code, therefore, allows notice and a hearing, if an *application* for benefits has been made, regarding the determination of the CSRA and provides for a method of revising the original CSRA. This section has no language precluding such a revision until after eligibility is determined and in fact allows a hearing on revision upon a determination of eligibility *or an application* for benefits. Indeed, if it is shown that the original CSRA is inadequate to meet the MMMNA, then the CSRA "shall" be revised. Section 1396r–5(e)(2)(C), Title 42, U.S.Code. Therefore, appellee was incorrect and the trial court erred in concluding that revision of the CSRA cannot occur until eligibility has been determined. Additionally, appellee's contention and the trial court's conclusion that income must be transferred first is erroneous.

As stated above, Section 1396r–5(f), Title 42, U.S.Code allows transfers to occur. Specifically, Section 1396r–5(f), Title 42, U.S.Code, states:

"Permitting transfer of *resources* to community spouse. (1) In general. An institutionalized spouse may * * * transfer an amount equal to the *community spouse resource allowance* * * *. The transfer under the preceding sentence shall be made as soon as practicable after the date of the initial determination of eligibility * * *." (Emphasis added.)

This section refers to the transfer of *resources* in the form of the CSRA. The section also requires that the *transfer* occur as soon as practicable after eligibility is determined; it does not state that determination of the *amount* of the CSRA must be made only after eligibility is determined. The transfer of *income,* discussed by appellee and the trial court, is addressed in an entirely different section. Section 1396r–5(d)(1), Title 42, U.S.Code, has been cited earlier and calls

for an amount of income held by the institutionalized spouse that is to be applied toward monthly institutional costs. This provision also allows a deduction from this amount, the CSMIA, if the community spouse's income falls short of the MMMNA. The amount of the CSMIA must be made available to the community spouse in order for this deduction to occur.

██ By its very language, this deduction does not occur until after eligibility is determined. However, and as stated earlier, this is unrelated to revising the CSRA prior to a determination of eligibility. Thus, in the present case, the CSRA should be revised because it is inadequate to meet the MMMNA, and this can be done prior to a determination of eligibility. Evidence at the hearing showed that even a transfer of all the resources will not be sufficient to meet the MMMNA. Once a transfer of all the resources is made, appellant will have no resources and income of only $663 a month in social security and will thus be eligible for medicaid. Appellant having been determined eligible for medicaid, an amount of appellant's income that will be applied toward monthly institutional costs must be determined. This amount will consist of appellant's income, $663 a month in social security. However, deductions can be made to this monthly amount, which includes an amount referred to as the CSMIA. Here, a CSMIA can be determined and then transferred to appellant's wife because even after all the resources have been transferred to her, she still cannot meet the MMMNA.

██ Hence, putting into play the plain reading of Section 1396r–5, Title 42, U.S.Code, the MMMNA will be met and appellant's entire social security monthly income will not be depleted by monthly institutional costs. This is the very purpose of the statute, which by its language gives special treatment in regard to medical assistance for spouses one of which is in a medical institution or nursing home. See Section 1396r–5(a) and (h)(1), Title 42, U.S.Code. Therefore, the plain and proper interpretation of the federal provisions is that the CSRA must be revised if a spouse shows that the original CSRA is inadequate to meet the MMMNA. This revision can occur *before* a determination of eligibility, upon the filing of an application for medicaid, and such revision contemplates the transfer of *resources*. Once eligibility has been determined, the amount of the institutionalized spouse's income which is applied toward monthly institutional costs can be deducted by an amount known as the CSMIA, which represents *income*. This occurs after the CSRA has already been revised prior to a determination of eligibility. Hence, the trial court erred in not interpreting the federal provisions as allowing a revision of the CSRA and thus the transfer of all the resources in appellant's case. The same conclusion follows from an interpretation of the relevant provisions of the Ohio Administrative Code, provisions which were made pursuant to and in compliance with the federal statutes.

Ohio Adm.Code 5101:6–7–02(A)(4) is essentially the same as Section 1396r–5(e)(2)(C), Title 42, U.S.Code, allowing a revision of the CSRA if it is inadequate to meet the MMMNA. The trial court stated that this provision permits the transfer of income to supplement the allowance of the community spouse and is consistent with federal provisions which require income to be transferred prior to resources to increase the CSRA in order to meet the MMMNA. (See trial court's decision at 5–6.) This interpretation is incorrect. We have already discussed the federal provision. Similarly, the Ohio Adm.Code provision does not require the transfer of income prior to resources. The pertinent language in Ohio Adm.Code 5101:6–7–02(A)(4) states:

"If either the IS [institutional spouse] or the CS [community spouse] can document that the CS resource allowance (in relation to the amount of income generated by it) is inadequate to raise the CS's income to the MMMNA, a hearing decision may substitute a higher *resource* allowance to *provide additional income* as necessary. \* \* \*" (Emphasis added.)

This provision calls for the substitution of *resources* which then will generate more income, and it does not state that *income* itself is substituted.

In addition, appellee cites Ohio Adm.Code 5101:1–39–362 and contends that its purpose is to allow the transfer of resources that are part of the CSRA but not counted as the resources of the institutionalized spouse and that the provision's purpose is not that the institutionalized spouse can transfer resources which exceed the CSRA. This interpretation is incorrect. Ohio Adm.Code 5101:1–39–362 states:

"(A) Once the initial eligibility has been established resources not used to determine eligibility for an institutionalized spouse (pursuant to rule 5101:1–39–361 of the Administrative Code) must be legally transferred to the community spouse when not already in the name of such person. \* \* \*"

This provision simply provides that once eligibility is established, resources not used in determining the institutionalized spouse's eligibility—resources which may have been the result of a revision of the CSRA—must be legally transferred to the community spouse. It does not state that eligibility is to be determined before any revision of the CSRA occurs or that only the original CSRA can be transferred. Indeed, Ohio Adm.Code 5101:1–39–36 states:

"(A) When an institutionalized spouse *applies* for medicaid, the CDHS [department] must determine the amount of resources that may be transferred from the institutionalized spouse to the community spouse, *in order to determine whether or not the institutionalized spouse is resource eligible and to protect a portion of the resources for the use of the community spouse.* Once eligibility is established, the institutionalized spouse shall be given a period of protected medicaid

eligibility to give the couple time to complete any necessary resource transfers." (Emphasis added.)

A computation of the CSRA can be made even before an application is filed. However, pursuant to Ohio Adm.Code 5101:1–39–35(E)(2), a hearing on that computation and a final determination cannot be held until an actual application for medicaid has been filed. Hence, the Ohio Adm.Code provisions are consistent with the federal provisions (as we interpret them).

In conclusion, both the federal and Ohio Administrative Code provisions support appellant's contention that the CSRA should have been revised in order to allow for the transfer of all of the resources because appellant showed that the original CSRA was inadequate to meet the MMMNA. Appellant, therefore, should have been determined eligible for medicaid benefits. Accordingly, appellant's assignment of error is sustained.

Having sustained appellant's assignment of error, the judgment of the Franklin County Court of Common Pleas is reversed and this cause is remanded to that court with instructions to remand to the department for proceedings consistent with this opinion.

*Judgment reversed
and cause remanded
with instructions.*

JOHN C. YOUNG and PEGGY BRYANT, JJ., concur.