OPINION
{¶ 1} Plaintiff-appellant, Evelyn George, on behalf of herself and the plaintiff class members, appeals from the judgment of the Court of Claims of Ohio in favor of defendant-appellee, the Ohio Department of Human Services ("ODHS").[1] Because the Court of Claims lacked subject-matter jurisdiction over this case, we reverse.
 {¶ 2} At the heart of this case is plaintiffs' claim that the ODHS improperly denied them Medicaid benefits, thus forcing them to pay for nursing care out of their own assets. Plaintiffs assert that this denial of benefits resulted from the ODHS' disregard for the Ohio Administrative Code provisions enacted to implement the Medicare Catastrophic Coverage Act of 1988 ("MCCA"), Section 1396r-5, Title 42, U.S. Code, a part of the federal Medicaid statute.
 {¶ 3} The federal Medicaid program enables states to reimburse needy individuals for medical services they cannot afford. See Title XIX of the Social Security Act, Section 1396 et seq., Title 42, U.S.Code. In Ohio, the ODHS is responsible for administering the Medicaid program. R.C.5111.01.
 {¶ 4} As part of the Medicaid program, married couples living in Ohio can apply to the ODHS for financial assistance when one spouse is institutionalized in a nursing facility. However, that institutionalized spouse is only eligible for Medicaid coverage if the couple's assets do not exceed proscribed limits. In 1988, Congress enacted the MCCA to establish a revised methodology for evaluating the amount of assets a couple could have and still be eligible for Medicaid benefits. Before the enactment of the MCCA, a spouse living at home (the "community spouse") was often left destitute by the drain on the couple's assets necessary for the institutionalized spouse to qualify for Medicaid. In enacting the MCCA, Congress intended to protect the community spouse from impoverishment by preserving some of the couple's income and resources for the community spouse's use.
 {¶ 5} After the MCCA became effective, the Ohio General Assembly directed the ODHS to "establish standards consistent with federal law for allocating income and * * * resources" of an institutionalized spouse who applied for Medicaid benefits and his[2] spouse. R.C. 5111.011(F) (as enacted by Am.Sub.H.B. No. 672, effective Nov. 14, 1989). In response to this directive, the ODHS promulgated Ohio Adm. Code 5101:1-39-22 through 5101:1-39-222 to address the allocation and transfer of income and Ohio Adm. Code 5101:1-39-35 through 5101:1-39-362 to address the allocation and transfer of resources. Originally filed as emergency rules, these provisions took effect on January 1, 1990, and were later readopted by the ODHS pursuant to normal R.C. 111.15 procedure effective March 1, 1990. Id., 1989-1990 Ohio Monthly Record, 1166-1168, 1171-1172.
 {¶ 6} Pursuant to these provisions, an institutionalized spouse's eligibility for Medicaid benefits turned upon the amount of his resources. When an institutionalized spouse applied for Medicaid, the county department of human services caseworker first completed Form 4076, "Resource Assessment Worksheet," which required the caseworker to list the value of each countable resource the couple owned and total the amount of the resources. Ohio Adm. Code 5101:1-39-35(A).
 {¶ 7} The caseworker next completed Form 4077, "Resource Transfer Worksheet," to determine how much of the couple's total resources could be transferred to the community spouse. Ohio Adm. Code 5101:1-39-361(A). In completing Form 4077, the caseworker first calculated the community spouse's resource allowance ("CSRA") — the amount of the couple's total countable resources preserved for the community spouse's use. Ohio Adm. Code 5101:1-39-361(A)(3). The caseworker then subtracted the CSRA from the couple's total countable resources. Ohio Adm. Code 5101:1-39-361(A)(4). The remaining sum was the institutionalized spouse's resources. If the amount of the institutionalized spouse's resources was equal to or less than $1,500, the institutionalized spouse was eligible for Medicaid benefits. Id. If the amount of the institutionalized spouse's resources exceeded $1,500, the institutionalized spouse was not eligible for Medicaid benefits and the caseworker sent the institutionalized spouse a "Notice of Denial of Your Application for Assistance." Id. This notice stated:
You have countable resources as specified on the attached ODHS 4076 "Resource Assessment Worksheet." It has been determined that you are over resources at this time. When your resources are reduced to approximately $_________, you should reapply for Medicaid.
Id. Thus, in order to be eligible for Medicaid benefits, the institutionalized spouse was forced to "spend down" his resources to the specified amount.
 {¶ 8} Whether or not the amount of the institutionalized spouse's resources qualified him for Medicaid benefits, the caseworker next determined the amount of income the community spouse needed to live in her home and how much of that income could come from the institutionalized spouse. To do this, the caseworker completed Form 4078, "Monthly Income Allowance Computation Worksheet." This worksheet first required the caseworker to calculate the community spouse's minimum monthly maintenance needs allowance ("MMMNA") by combining the MMMNA need standard (set by the ODHS) with an excess shelter allowance. Ohio Adm. Code 5101:1-39-221(D)(1). The MMMNA represented the amount of income that the ODHS estimated a community spouse would need to meet her necessary monthly expenses.
 {¶ 9} Second, the caseworker subtracted the community spouse's monthly income from the MMMNA. Ohio Adm. Code 5101:1-39-221(D). The resulting number was the community spouse's monthly income allowance ("MIA") — the amount of income the institutionalized spouse could transfer from his income to the community spouse. Ohio Adm. Code 5101:1-39-221(A). The ODHS did not consider the MIA available to pay for the institutionalized spouse's care, thus requiring Medicaid to pay a greater portion of the institutionalized spouse's medical expenses than it would absent the MIA provision.
 {¶ 10} Each worksheet the caseworker completed contained on its reverse side a notice that the Medicaid applicant could request a state hearing to review the caseworker's resource and income determinations. In addition to reviewing the caseworker's determinations, a hearing officer could also alter the caseworker's calculations in certain ways. Specifically, Ohio Adm. Code 5101:1-35-73(D) (effective March 22, 1990), and its identical successor, Ohio Adm. Code 5101:1-6-7-02(A)(4) (effective June 1, 1993), provided that:
If either the [institutionalized spouse] or the [community spouse] can document that the [community spouse] resource allowance (in relation to the amount of income generated by it) is inadequate to raise the [community spouse's] income to the MMMNA, a hearing decision may substitute a higher resource allowance to provide additional income as necessary.
 {¶ 11} In applying this provision, the ODHS adopted an income-first policy whereby the ODHS required the hearing officer to first transfer an institutionalized spouse's income (the MIA) to the community spouse to raise the community spouse's income to the MMMNA. If this transfer of income was insufficient to raise the community spouse's income to the MMMNA, then the hearing officer could also transfer some or all of the institutionalized spouse's resources so that the community spouse's income met the MMMNA.[3] In other words, the ODHS only permitted the transfer of the institutionalized spouse's resources to the community spouse if the community spouse's income (including that part of the community spouse's income generated by her resources), plus the income of the institutionalized spouse (the MIA), did not equal the MMMNA. Under this approach, it was less likely that resources would be transferred, which in turn, left the institutionalized spouse with more available resources and made it less likely that the institutionalized spouse would qualify for Medicaid benefits.
 {¶ 12} On November 27, 1995, Herman F. Seymour filed suit against the ODHS in the Court of Claims, challenging the ODHS' application of the income-first policy as part of its determination that Seymour's wife, Hazel E. Seymour, was ineligible for Medicaid benefits. Seymour maintained that the ODHS' income-first policy violated the plain meaning of Ohio Adm. Code 5101:6-7-02(A)(4), and that, instead, Ohio Adm. Code5101:6-7-02(A)(4) required the ODHS to apply the resource-first policy.
 {¶ 13} Unlike the income-first policy, the resource-first policy mandated that the hearing officer first transfer the institutionalized spouse's resources to the community spouse in order to raise the community spouse's income to the MMMNA. Consequently, if the community spouse's income, without the MIA supplement from the institutionalized spouse's income, did not reach the MMMNA, then the hearing officer could raise the CSRA to reserve additional resources sufficient to generate enough income to meet the shortfall. By raising the CSRA, the institutionalized spouse was allocated less resources, thus decreasing or eliminating the overage of resources the institutionalized spouse would have to "spend down" to reach the $1,500 Medicaid eligibility point.
 {¶ 14} On February 2, 1996, Seymour filed an amended complaint, seeking the certification of a class of individuals who unnecessarily "spent down" resources to become eligible for Medicaid benefits because of the ODHS' failure to apply the resourcefirst method. Seymour then also moved for class certification.
 {¶ 15} On April 1, 1997, both Seymour and the ODHS moved for summary judgment. As part of their summary judgment motion, the ODHS argued that the trial court should dismiss Seymour's action for lack of subject-matter jurisdiction.
 {¶ 16} On September 4, 1997, Seymour settled his action against the ODHS. However, rather than dismissing Seymour's action, the trial court allowed Bessie Quinan's motion to intervene and granted Quinan's motion to file a second amended complaint. In the second amended complaint, Quinan alleged:
[I]t was the unlawful policy and practice of Defendant to (1) disregard Ohio Adm. Code § 5101:6-7-02(A)(4) and its predecessor, Ohio Adm. Code § 5101:1-35-73(D), and (2) not permit a revision of the community spouse resource allowance under Plaintiffs' circumstances or give notice of the right to such a revision. Defendant subjected Plaintiffs to said unlawful policy and practice, and their rights under Ohio law and the Ohio Administrative Code were violated by Defendant.
For the ODHS' allegedly wrongful acts and omissions, Quinan sought damages in the amount she and her husband were required to "spend down" or in the amount she and her husband paid to nursing facilities after being denied Medicaid benefits.
 {¶ 17} In the same judgment entry granting the motion to file the second amended complaint, the trial court also certified a class of:
All persons who, at any time from March 22, 1990 through December 31, 1995, were institutionalized spouses or community spouses who were deprived of their rights under Ohio Administrative Code 5101:6-7-02(A)(4) and/or 5101:1-35-73(D) or were not informed of their rights under Ohio Administrative Code 5101:6-7-02(A)(4) and/or 5101:1-35-73(D) and who have unnecessarily "spentdown" their resources.
Further, the trial court denied all other pending motions, including the ODHS' motion for summary judgment.
 {¶ 18} Undeterred by the trial court's denial of its motion for summary judgment, the ODHS filed a motion for judgment on the pleadings, i.e., the second amended complaint and the answer thereto. Once again, the ODHS argued that the trial court lacked subject-matter jurisdiction.
 {¶ 19} On May 27, 1998, the Sixth Circuit decided Chambers v. OhioDept. of Human Servs. (C.A.6, 1998), 145 F.3d 793, in which it held that the ODHS' interpretation of Section 1396r-5(e)(2)(C), Title 42, U.S. Code, the Medicaid provision on which Ohio Adm. Code 5101:6-7-02(A)(4) and 5101:1-35-73(D) were modeled, and the ODHS' decision to apply the income-first approach were reasonable and permissible. Given this holding, the ODHS filed a motion to decertify the class in the Court of Claims. The ODHS argued that the Chambers decision resolved the issue the class sought to litigate, and thus, the class no longer met the Civ.R. 23(A) numerosity or typicality requirements.
 {¶ 20} On April 15, 1999, the trial court agreed with the ODHS and issued a judgment entry granting the ODHS' motion to decertify the class. In the same entry, the trial court denied the ODHS' motion for judgment on the pleadings without discussing the ODHS' jurisdictional argument.
 {¶ 21} Quinan appealed the trial court's April 15, 1999 judgment to this court, arguing that the Chambers decision did not effect either the numerosity or typicality factors. This court agreed with Quinan and held that, at most, the Chambers decision effected the commonality factor by answering one common question, i.e., whether federal law mandated the resource-first method. Quinan v. Ohio Dept. of Human Servs. (Mar. 30, 2000), Franklin App. No. 99AP-562 (Memorandum Decision). Thus, we remanded the case to the trial court to determine whether the remaining common questions of state law predominated over the individual questions.
 {¶ 22} On remand, the trial court first substituted Evelyn George, Quinan's executrix, as the named plaintiff due to Quinan's death. Then, on February 16, 2001, the trial court issued a judgment entry again decertifying the class, concluding that common questions did not predominate because, pursuant to the Chambers decision, the ODHS could adopt an income-first or resource-first method. George appealed from this judgment entry.
 {¶ 23} On appeal, we determined that the trial court inappropriately resolved the merits of the action in considering whether common questions predominated. George v. Ohio Dept. of Human Serv. (2001),145 Ohio App.3d 681, 687. Further, we concluded that the only remaining (and, thus, predominate) issue was whether the ODHS' "incomefirst approach to determining Medicaid eligibility was proper under the applicable [state] law(s)." Id. at 688. Accordingly, we remanded the case to the trial court with instructions to certify the class.
 {¶ 24} On March 5, 2002, the trial court recertified the same class it had previously certified. On the same day, the trial court issued a judgment entry ordering George to give notice of the pendency of the case to all potential class members. George complied.
 {¶ 25} On November 13, 2002, the ODHS again moved for summary judgment. For the third time, the ODHS argued that the trial court lacked subject-matter jurisdiction. Plaintiffs also filed for summary judgment. Without discussion, the trial court denied both motions.
 {¶ 26} On January 13 through 14, 2003, the trial court conducted a trial on the issue of the ODHS' liability only. On March 25, 2004, the trial court entered judgment in favor of the ODHS. In the accompanying decision, the trial court held that the ODHS could adopt the income-first method to determine whether a higher CSRA was warranted pursuant to Ohio Adm. Code 5101:6-7-02(A)(4) or 5101:1-35-73(D). Plaintiffs appealed from this judgment. Although the ODHS did not file a notice of cross-appeal, the ODHS' brief also included cross-assignments of error.[4]
 {¶ 27} On appeal, plaintiffs assign the following errors:
[1.] The trial court erred as a matter of law when it found that Ohio law in effect during the class period January 1, 1990 — December 31, 1995 permitted the income first eligibility methodology applied to the Quinans.
[2.] The trial court erred as a matter of law when it held that ODHS' application of the income first eligibility requirement was permissible, since the income first rule was never adopted as required by R.C. 5111.011
and R.C. 111.15.
[3.] The trial court erred as a matter of law and awarded judgment against the manifest weight of the evidence when it held that Ms. George had not proven that ODHS' actual practice was not to revise any CSRA allowances (the "income only" policy).
 {¶ 28} The ODHS assigns the following cross-assignments of error:
[1.] The Court of Claims erred in failing to hold that it lacked jurisdiction over the Class's claims.
[2.] ODHS is immune from liability.
[3.] The Court of Claims erred in failing to hold that the claims of many of the Class members are barred by the applicable statute of limitations.
 {¶ 29} Because the ODHS' first cross-assignment of error is dispositive of this case, we will address it first. Plaintiffs, however, argue that this court cannot even consider this cross-assignment of error because the ODHS did not file a notice of a crossappeal. We disagree. Even if we did interpret Civ.R. 3(C) to require the ODHS to file a notice of cross-appeal (which we do not), we can still consider the ODHS' first crossassignment of error because it challenges the Court of Claims' jurisdiction. This court may raise the issue of subject-matter jurisdiction sua sponte. State ex rel. White v. Cuyahoga Metro. Hous.Auth. (1997), 79 Ohio St.3d 543, 544.
 {¶ 30} By its first cross-assignment of error, the ODHS argues, in part, that the Court of Claims has no jurisdiction over matters, such as the present case, which are, in effect, attempts to appeal an administrative decision. We agree.
 {¶ 31} Although crafted as an action for damages, plaintiffs' action is in reality an appeal of the ODHS' Medicaid eligibility determinations. At its core, plaintiffs' "claim" is that the ODHS improperly applied Ohio law, resulting in erroneous determinations that the plaintiff-institutionalized spouses were ineligible for Medicaid benefits. Plaintiffs asked the Court of Claims to find unlawful the income-first method and to re-determine the institutionalized spouses' eligibility using the resource-first method. Thus, plaintiffs' claim requested the Court of Claims to review the ODHS' eligibility determinations for error, and correct that error by awarding damages.
 {¶ 32} However, the right to dispute the validity of an administrative decision is only conferred by statute and, if such a statutory right exists, the party aggrieved by the administrative decision can only seek an appeal via the method articulated in the statute. Midwest FireworksMfg. Co., Inc. v. Deerfield Twp. Bd. of Zoning Appeals (2001),91 Ohio St.3d 174, 177; Harrison v. Ohio State Med. Bd. (1995),103 Ohio App.3d 317, 321. Here, both Ohio statute and administrative rules outlined the appellate process available to plaintiffs if they chose to challenge the ODHS' determinations of their eligibility for Medicaid benefits. First, plaintiffs could request a state hearing to review the ODHS' determination of the community spouse monthly income allowance (the MIA), the community spouse minimum monthly maintenance needs allowance (the MMMNA), the community spouse total gross income, the spousal share of assessed resources, the couple's countable resources and/or the community spouse resource allowance (the CSRA). R.C. 5101.35(B); Ohio Adm. Code 5101:1-35-036 (repealed June 1, 1993); Ohio Adm. Code5101:6-3-01(A)(21) (effective June 1, 1993). If plaintiffs disagreed with the state hearing decision, they had the right to request an administrative appeal. R.C. 5101.35(C); Ohio Adm. Code 5101:1-35-08 (repealed June 1, 1993); Ohio Adm. Code 5101:6-8-01(A) (effective June 1, 1993). Then, if plaintiffs disagreed with the administrative appeal decision, they had the right to appeal that decision to the court of common pleas. R.C. 5101.35(E); Ohio Adm. Code 5101:1-35-089(A) (repealed June 1, 1993); Ohio Adm. Code 5101:6-9-01(A)(1) (effective June 1, 1993).
 {¶ 33} Indeed, this is the appellate process that the plaintiff inKimnach employed to challenge the ODHS' denial of his application for Medicaid benefits. Kimnach v. Ohio Dept. of Human Servs. (1994),96 Ohio App.3d 640, abrogated by, Wisconsin Dept. of Health FamilyServs. v. Blumer (2002), 534 U.S. 473. On appeal from the Franklin County Court of Common Pleas to this court, Kimnach made, in part, the same argument plaintiffs now make, i.e., that the ODHS erroneously concluded that he was ineligible for Medicaid benefits after improperly using the income-first method to calculate the amount of resources attributable to himself and his wife, the community spouse, under Ohio Adm. Code5101:6-7-02(A)(4). After a review of the record and the relevant federal and state law, we agreed with Kimnach and remanded his case to the trial court with instructions to remand the case to the ODHS for a re-determination of Kimnach's eligibility using the resource-first method.[5]
 {¶ 34} Notably, the Court of Claims is not a part of the only process available to plaintiffs to dispute the validly of the ODHS' eligibility determinations. Therefore, plaintiffs cannot seek relief from the ODHS' determinations in the Court of Claims.
 {¶ 35} Furthermore, "[a]n action in the Court of Claims cannot become a substitute for a statutorily created right of appeal [of an administrative decision] in a different court." Swaney v. Bur. ofWorkers' Comp. (Nov. 10, 1998), Franklin App. No. 98AP-299. To hold otherwise would allow the Court of Claims to function as a court of review with the power to overrule an administrative decision by collateral attack. Providence Hosp. v. McBee (Mar. 17, 1983), Franklin App. No. 82AP-383. The Court of Claims lacks such appellate jurisdiction.Bailey v. Ohio Dept. of Admin. Servs. (Mar. 5, 2002), Franklin App. No. 01AP-1062. See, also, Helfrich v. Ohio Unemployment Comp. Bd. of Rev.
(May 20, 1999), Franklin App. No. 98AP-1074 (because appellant had a remedy through the administrative appeals process, the Court of Claims did not err in dismissing the complaint for lack of jurisdiction); Buemiv. Unemployment Comp. Bd. of Rev. (Aug. 15, 1995), Franklin App. No. 95API01-77 (appellant's action was "not cognizable in the Court of Claims as [it was] an attempt to challenge further the decision from an administrative tribunal * * *"); Blinn v. Ohio Bur. of Emp. Servs. (Nov. 24, 1992), Franklin App. No. 92AP-1088 ("The Court of Claims has no jurisdiction to hear administrative appeals."); Campbell v. Indus. Comm.of Ohio (Jan. 16, 1990), Franklin App. No. 89AP-929 ("The Court of Claims does not have jurisdiction to hear what, in effect, is simply an attempt to appeal from [an administrative agency's] decisions."); Stauffer v.Ohio Dept. of Transp. (1989), 63 Ohio App.3d 248, 253 (because an administrative agency had jurisdiction to hear the appellant's claim, the Court of Claims lacked jurisdiction to hear the case). Therefore, because the Court of Claims cannot review an administrative decision, that court lacked jurisdiction to hear plaintiffs' action.
 {¶ 36} Plaintiffs, however, argue that Court of Claims had subject-matter jurisdiction over their action because it is the only court that could hear it. Plaintiffs assert that their action is one for monetary damages, and only the Court of Claims has jurisdiction over actions seeking monetary damages from the state.
 {¶ 37} Plaintiffs' argument is unavailing because plaintiffs' positioning of this case as an action for monetary damages is not dispositive of jurisdiction. As we concluded above, plaintiffs' "claim" is in reality an appeal of the ODHS' Medicaid eligibility determinations. Plaintiffs had the opportunity to contest these determinations through the administrative appellate process, as occurred in Kimnach, supra. In fact, plaintiffs had a statutorily-mandated process in which to contest their Medicaid eligibility determinations and, conceivably, prevent the economic injury for which they are now seeking redress. Incurring economic harm by forgoing the administrative appeal process does not invest jurisdiction in the Court of Claims. To hold otherwise would make the Court of Claims an alternative forum to which individuals aggrieved by an administrative decision could appeal that decision. As we stated above, the Court of Claims does not have such appellate jurisdiction.
 {¶ 38} Accordingly, we sustain the ODHS' first cross-assignment of error.
 {¶ 39} Because we have concluded that the Court of Claims lacked subject-matter jurisdiction over plaintiffs' action, plaintiffs' assignments of error and the remainder of the ODHS' cross-assignments of error are moot.
 {¶ 40} For the foregoing reasons, we sustain the ODHS' first cross-assignment of error and overrule plaintiffs' assignments of error and the ODHS' remaining crossassignments of error as moot. Further, we reverse the March 25, 2004 judgment and remand this case to the Court of Claims for it to vacate its judgment and dismiss plaintiffs' action.
Judgment reversed and cause remanded.
Bryant and McCormac, JJ., concur.
McCormac, J., retired, of the Tenth Appellate District, assigned to active duty under authority of Section 6(C), Article IV, Ohio Constitution.
[1] This department is now known as the Ohio Department of Job and Family Services. However, because plaintiffs named the Ohio Department of Human Services as the defendant in this action, we will refer to it by that name.
[2] Because the institutionalized spouse was most often the husband and the community spouse most often the wife, we will refer to the institutionalized spouse as "he" and the community spouse as "she."
[3] Income generated from the institutionalized spouse's resources would increase the community spouse's income.
[4] Presumably, the ODHS did not file a notice of a cross-appeal because it intended "to defend a judgment or order appealed by an appellant on a ground other than that relied on by the trial court," but did not "seek to change the judgment or order." App.R. 3(C)(2). Under such circumstances, an appellee need not file a notice of cross-appeal. Id.
[5] Our decision in Kimnach is not dispositive of the underlying merits at issue here because the reasoning underlying our holding that the federal statutes and Ohio rules mandated the resource-first approach was explicitly rejected by the United States Supreme Court in the Blumer
decision.